UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**THOMAS FOSKEY,**

    Petitioner,

v.                                                                       Case No. 8:20-cv-2369-MSS-TGW

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

    Respondent.

_____

**ORDER**

Thomas Foskey petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state-court convictions for grand theft motor vehicle and possession of a firearm by a felon. After reviewing the petition (Dkt. 1), the response and the appendix containing the relevant state-court record (Dkt. 12), and the reply (Dkt. 14), the Court **DENIES** the petition.

**I.   BACKGROUND**

In January 2018, Foskey was charged by information with two counts of grand theft motor vehicle, two counts of possession of a firearm or ammunition by a felon, and one count of possession of a firearm by a felon. (Dkt. 12-2, Ex. A) The charges stemmed from Foskey's theft of two vehicles and law enforcement's subsequent discovery that Foskey, a convicted felon, had multiple firearms and ammunition in his motorhome. (Id., Ex. C) Foskey was initially appointed counsel from the Public Defender's Office, but the Office conflicted off the case because of its representation

of a codefendant. (Id., Ex. O, at 5) At that point, Susan Michele was appointed to represent Foskey. (Id., Ex. D)

In February 2018, Foskey retained Scott Tremblay as private counsel. (Id., Ex. E; see also id., Ex. O, at 5) Over the next few months, Foskey grew dissatisfied with Tremblay's performance. (Id., Ex. M, at 2) Thus, in October 2018, Foskey filed a motion to "substitute attorney Susan Michele[ ] as the court-appointed attorney for [him] . . . and hereby discharge" Tremblay. (Id., Ex. H) The court granted the motion, discharging Tremblay and permitting Michele to resume her representation of Foskey. (Id., Ex. I)

On December 4, 2018, the State filed an amended information. (Id., Ex. B) Foskey now faced the following charges: two counts of grand theft motor vehicle, one count of petit theft, one count of possession of a firearm by a violent career criminal ("VCC"), and two counts of possession of a firearm by a felon. (Id., Exs. A, B) If convicted of possession of a firearm by a VCC, Foskey faced a mandatory sentence of life in prison. See Fla. Stat. §§ 790.235(1), 775.084(4)(d)1; see also Dkt. 12-2, Ex. O, at 31 (trial court explaining to Foskey that "in this particular instance, you have a mandatory life sentence if you're found guilty as charged[ ]").

On December 26, 2018, Foskey sent a letter to the court. (Dkt. 12-2, Ex. M) He alleged that, shortly after her initial appointment in January 2018, Michele had visited him in jail and conveyed that "the State was offering [him a plea deal of] 50 months." (Id. at 2) According to Foskey, Michele "told [him] not to take the offer" because she "could get" two counts "dropped due to some case law she knew." (Id.) Foskey stated

2

that he "would have signed this plea" if he had not received "bad advice from [ ] Michele." (Id. at 5) Instead, in the "beginning of February [2018]," Foskey's fiancée retained Tremblay, and the 50-month offer was withdrawn. (Id. at 2-3) Foskey also claimed that, ever since Michele was reassigned to represent him in October 2018, she "ha[d] done nothing but lie to [him], threaten [him]," and attempt to "force [him] to sign a 10[-]year plea." (Id. at 3) Foskey asked the court to "please put the 50[-]month offer . . . back on the table." (Id. at 4-5)

The court held a Nelson[1] hearing two days after Foskey sent the letter. (Id., Ex. O) During the hearing, Foskey asked to court to "give [him] another attorney," complaining that he "never had the option to take" the 50-month offer. (Id. at 6, 13) Michele, for her part, claimed that Foskey's letter "mischaracteriz[ed] [her] representation." (Id. at 7) She stated that, on February 9, 2018, she had visited Foskey in jail and informed him of the 50-month offer. (Id. at 17) According to Michele, she told Foskey that the offer was a "very good deal," and her "expectation was that he would take that offer" at the next pretrial hearing on February 23, 2018. (Id. at 17, 19) Foskey, however, told Michele that he "didn't want [her] to represent him." (Id. at 8) As Michele put it, she "was attempting to explain" that "the 50-month offer was a very good deal" when Foskey "told [her] that he had . . . another attorney"—that is, Tremblay. (Id. at 19-20) Michele also stated that she did not "know of" any plea discussions Tremblay subsequently had with the State. (Id. at 8-9)

---

[1] Florida courts hold a Nelson hearing when a defendant wishes to discharge his court-appointed lawyer. See Nelson v. State, 274 So. 2d 256, 258-59 (Fla. 4th DCA 1973).

The court ultimately found "no reasonable cause [to believe] that [Michele was], at this time, rendering . . . ineffective assistance of counsel." (Id. at 21) As a result, the court informed Foskey that if he "still wish[ed] to discharge" Michele, it would not be "required to give [him] another attorney." (Id.) Instead, the court would treat Foskey's request as "an exercise of [his] right to represent [himself]." (Id. at 22) Foskey confirmed that he wished to discharge Michele. (Id. at 24) The court proceeded to conduct a Faretta[2] inquiry, found that Foskey was "competent to waive his right to an attorney," and permitted him to proceed *pro se* with Michele as standby counsel. (Id. at 24-32) Before the hearing concluded, the prosecutor stated on the record that the State was "revok[ing] the ten-year plea offer" and "seeking maximum penalties." (Id. at 36)

The next pretrial hearing was held on January 25, 2019. (Id., Ex. R) The prosecution reiterated that it had withdrawn all plea offers. (Id. at 5) In response, the court asked Foskey whether he wished to "have [ ] Michele back on the case right now so she can . . . talk to the State and perhaps see if she can reopen negotiations." (Id. at 6) Foskey answered in the affirmative, and the court "reappoint[ed]" Michele to "see . . . where the State is at . . . in terms of potential resolution short of trial." (Id. at 6-7) The parties reached a resolution later that day. Foskey agreed to plead *nolo contendere* to two counts of grand theft motor vehicle and one count of possession of a firearm by a felon. (Id., Ex. P) In exchange, Foskey would receive concurrent sentences of five

---

[2] Faretta v. California, 422 U.S. 806 (1975).

4

years' imprisonment on the grand-theft counts and ten years' imprisonment on the felon-in-possession count. (Id. at 1-2) The court accepted Foskey's plea and sentenced him in accordance with the parties' agreement. (Id., Ex. R, at 37-39)

Foskey did not pursue a direct appeal. Instead, he sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Id., Ex. W) Foskey raised a single ground for relief: that Michele provided ineffective assistance of counsel "when she affirmatively advised [him] to reject" the State's 50-month offer "because she could get several charges dismissed by filing a motion to suppress."[3] (Id. at 4) The state postconviction court, presided over by the same judge who had conducted the Nelson hearing, rejected Foskey's claim. (Id., Ex. X) Foskey appealed, and the state appellate court *per curiam* affirmed the denial of relief. (Id., Exs. AA, CC, DD) This federal habeas petition followed. (Dkt. 1)

## II. LEGAL STANDARDS

### A. AEDPA

Because Foskey filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA governs his claims. Lindh v. Murphy, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[3] A motion to suppress was never filed in this case.

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Clearly established federal law refers to the holding of an opinion by the United States Supreme Court at the time of the relevant state-court decision. Id. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington v.

Richter, 562 U.S. 86, 103 (2011).

      **B.**    **Ineffective Assistance of Counsel**

Foskey asserts ineffective assistance of counsel—a difficult claim to sustain. Strickland v. Washington, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690-91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

Because the standards under Strickland and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" Nance v. Warden, Ga. Diag. Prison, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The state appellate court affirmed the denial of Foskey's motion for postconviction relief without discussion. (Dkt. 12-2, Ex. CC) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). Because the state postconviction court provided reasons for denying Foskey's claim in a written order, (Dkt. 12-2, Ex. X), this Court evaluates those reasons under § 2254(d).

### III.   DISCUSSION

In his sole ground for federal habeas relief, Foskey argues that Michele rendered ineffective assistance of counsel in two respects: first, by "affirmatively advis[ing] [him] to reject [the 50-month plea deal] because she could get several charges dismissed

8

by filing a motion to suppress"; and second, by "failing to convey to the State that [he] wanted to accept the 50-month plea." (Dkt. 1 at 4) In Foskey's telling, he advised Michele that "he wanted to accept the 50-month plea." (Id.) Michele then "informed [him] that she would be able to get [two counts] dropped based on the motion to suppress and that it would result in a lower plea offer." (Id.) Based on this advice, Foskey allegedly "acquiesced" and told Michele that "he would await the ruling on the motion to suppress that she intended on filing." (Id.) As a result, Foskey argues, he lost his chance to accept the 50-month plea offer, which would have resulted in a "sentence 70[] months less than" the ten-year sentence he is currently serving. (Id. at 6)

The state postconviction court rejected this claim without holding an evidentiary hearing. (Dkt. 12-2, Ex. X) The court explained that "over the course of [Foskey's] case, he changed attorneys several time[s]." (Id. at 3) First, "the Office of the Public Defender was appointed," but it "conflicted off" the case and Michele began representing Foskey. (Id.) Then Foskey hired "private counsel"—that is, Tremblay. (Id.) Later, "upon [Foskey's] request, private counsel was discharged, and [ ] Michele was again appointed." (Id.) Next, the court summarized the statements made at the Nelson hearing. (Id. at 3-4) It noted that Michele "explained to the [c]ourt . . . that there was a 50[-]month offer originally, which was extended to [Foskey]." (Id.) Michele "then clarified for the [c]ourt that she did relay the 50-month offer to [Foskey], advised him that it was a good offer, and she thought he would take it." (Id. at 4) "However, when she was at the jail speaking to [Foskey] about the offer, he advised

9

her that he had another attorney." (Id.) The court noted that, "[a]t the last hearing on January 25, 2019, the State advised the [c]ourt that all offers had been withdrawn," but "[a]fter much conversation between the [c]ourt and the parties, the parties continued to negotiate resolution of the case." (Id.) The resolution that was ultimately reached—"ten [ ] years in the Department of Corrections"—"allowed [Foskey] to avoid a life sentence." (Id.)

The court ultimately concluded that Foskey "fail[ed] to establish that [ ] Michele was deficient in handling the 50-month offer." (Id.) In the court's view, Foskey "unfortunately unraveled his own deal" "by hiring private counsel in the middle of plea negotiations." (Id.) According to the court, Foskey could not "now claim that counsel was ineffective for her advice on this offer, when [ ] Michele clearly explained to the [c]ourt that she relayed the offer, advised [Foskey] that it was a good offer, and [he] then advised her that he hired private counsel." (Id.) On that basis, the court "denied" Foskey's sole ground for relief. (Id.)

The rejection of this claim was reasonable. "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, 140 (2012). Strickland requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092,

1099 (11th Cir. 2007). Moreover, because the state postconviction court in this case rejected Foskey's claim on the merits, he cannot prevail unless he shows that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020).

Foskey fails to overcome the "doubly deferential" standard of review required by Strickland and AEDPA. Cullen v. Pinholster, 563 U.S. 170, 190 (2011). As an initial matter, the state postconviction court credited Michele's statements at the Nelson hearing concerning her discussions with Foskey about the 50-month offer.[4] (Dkt. 12-2, Ex. X, at 4) "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Kimbrough v. Buss, No. 3:08-cv-552-LAC-MD, 2011 WL 2414879, at *23 (N.D. Fla. May 20, 2011) (deferring to state postconviction court's determination that "[petitioner's] claim [was] meritless based on testimony from the two Nelson hearings"), adopted by 2011 WL 2374385 (N.D. Fla. June 10, 2011). Foskey has not shown by "clear and convincing evidence" that the court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, he cannot overcome the "presumption of correctness" afforded to that determination. Consalvo, 664 F.3d at 845.

---

[4] As noted above, the same judge presided over both the Nelson hearing and the Rule 3.850 proceedings.

11

Having credited Michele's statements at the <u>Nelson</u> hearing, the state postconviction court reasonably concluded that she did not perform deficiently with respect to the 50-month offer. Foskey alleges that Michele was ineffective because she "advised [him] to hold off on accepting the [50-month] plea [offer] until she could obtain a ruling on the motion to suppress." (Dkt. 1 at 4) He also claims that Michele was deficient for failing to "inform the State Attorney" that he wished to "accept the 50-month plea." (<u>Id.</u> at 6) As explained above, however, Michele offered a different version of events at the <u>Nelson</u> hearing. She stated that on February 9, 2018, she visited Foskey in jail and informed him of the 50-month offer. (Dkt. 12-2, Ex. O, at 17) She told him the offer was a "very good deal," and her "expectation was that he would take that offer" at the next pretrial hearing. (<u>Id.</u> at 17, 19) At that point in the conversation, however, Foskey told Michele that he "didn't want [her] to represent him." (<u>Id.</u> at 8) In other words, she "was attempting to explain" that "the 50-month offer was a very good deal" when Foskey "told [her] that he had . . . another attorney"—namely, Tremblay. (<u>Id.</u> at 19-20)

Based on this testimony, a reasonable jurist could conclude that Michele did not advise Foskey to "hold off" on accepting the 50-month offer until she filed a motion to suppress. To the contrary, Michele stated that she told Foskey it was "a very good deal," one she expected him to accept at the next hearing. (<u>Id.</u> at 19) Thus, to the extent that Foskey's <u>Strickland</u> claim rests on the assertion that Michele urged him to delay accepting the offer, the state postconviction court reasonably concluded that it lacked merit.

Likewise, the court reasonably rejected the other component of Foskey's claim—namely, his assertion that Michele was deficient for failing to convey his alleged acceptance of the 50-month offer. Michele stated that, as she was trying to explain that the 50-month offer was "a very good deal," Foskey told her he had hired "another attorney" and thus "didn't want [her] to represent him." (Id. at 8, 19-20) That statement is supported by Foskey's letter to the court explaining that his fiancée had retained Tremblay in the "beginning of February [2018]." (Id., Ex. M, at 2-3) Having learned from Foskey that he had hired another lawyer and no longer wanted her to represent him, Michele did not act unreasonably by failing to accept a plea offer on his behalf. See Nielsen v. Hopkins, 58 F.3d 1331, 1334 (8th Cir. 1995) ("[A]n attorney may not enter a plea of guilty, or its equivalent, without a defendant's consent." (citing Brookhart v. Janis, 384 U.S. 1 (1966))). At the very least, Foskey cannot show that "no reasonable jurist could find that [Michele's] performance fell within the wide range of reasonable professional conduct." Franks, 975 F.3d at 1176.

In sum, the state postconviction court reasonably determined that Michele did not perform deficiently in her handling of the 50-month plea offer. Accordingly, Foskey's sole ground for relief lacks merit, and his petition must be denied.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Foskey's petition for writ of habeas corpus, (Dkt. 1), is **DENIED**.

2. The Clerk is **DIRECTED** to enter judgment against Foskey and to **CLOSE** this case.

3. Because Foskey neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of December 2023.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE